# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Marc Palmer,                                  :
                           Petitioner          :
                                               :
                    v.                         :    No. 79 C.D. 2015
                                               :    SUBMITTED:  July 31, 2015
Workers' Compensation Appeal                   :
Board (Tasty Baking Company),                  :
                           Respondent          :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


<u>OPINION NOT REPORTED</u>


**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**                          **FILED:  September 10, 2015**


Claimant, Marc Palmer, petitions for review of an order of the Workers' Compensation Appeal Board (Board) that, in relevant part, affirmed the decision of Workers' Compensation Judge (WCJ) Pamela A. Santoro granting the termination petition of Employer Tasty Baking Company and denying his penalty petition.  We affirm.

Claimant worked for Employer as a machine operator of a cake-wrapping machine.  His duties included loading the machine, putting supplies on the machine, straightening out cakes, lifting product and adjusting the machine.  WCJ Santoro's August 9, 2013 Decision, Finding of Fact (F.F.) No. 12(a).  He stopped working in June 2011, maintaining that his hands hurt.  In response,

Employer issued a temporary notice of temporary compensation payable, which subsequently converted to a notice of compensation payable (NCP), accepting Claimant's injury as a wrist strain. In July 2011, Claimant filed a claim petition alleging that he sustained a work-related injury in April 2011 in the form of bilateral carpal-tunnel syndrome and bilateral tendonitis. In its answer, Employer denied all material allegations. In August 2011, Eon K. Shin, M.D., performed carpal-tunnel release surgery on Claimant's right hand. In an October 2011 decision by WCJ Stephen Harlen, the NCP was expanded to include bilateral carpel-tunnel injuries, status post carpel-tunnel surgeries, and the claim petition was withdrawn.

In December 2011, Employer filed a termination petition alleging that Claimant had fully recovered from his work injuries as of November 9, 2011, or in the alternative, that he had failed to respond in good faith to a specific job offer.[1] In February 2012, Claimant filed a penalty petition alleging that Employer had failed to pay for treatment rendered by Richard Kaplan, M.D., board-certified in physical medicine and rehabilitation and who first saw Claimant in July 2011. *Id.*, No. 13(b). In May 2012, Claimant filed a petition for review of the utilization review determination that the treatment that Dr. Kaplan rendered from January 2012 and ongoing was neither reasonable nor necessary. The petitions were consolidated for decision.

---

[1] WCJ Santoro accepted the testimony of Christine Johnson, Employer's director of human resources, who indicated that Employer offered Claimant his pre-injury job based on the report of Employer's independent medical examiner. It is undisputed that Claimant received the three letters that she sent offering him his pre-injury job and that he called and refused the offer. WCJ Santoro's August 9, 2013 Decision, Finding of Fact (F.F.) No. 15.

WCJ Santoro granted Employer's termination petition, accepting the opinion of Andrew B. Sattel, M.D., the board-certified orthopedic surgeon who conducted a November 2011 independent medical examination (IME) of Claimant and opined that he was fully recovered and able to work without restrictions. The WCJ found: "Dr. Sattel's opinions are supported by his careful examination, objective tests, and Claimant's medical history. . . . [A]s a Board certified orthopedic surgeon with extensive experience in treatment of the upper extremities and hands, Dr. Sattel is more credible than Dr. Kaplan, who does not perform surgery." *Id*., No. 20. As for Dr. Kaplan, the WCJ found his testimony to be less credible and persuasive than that of Dr. Sattel as to Claimant's injury, its cause and his continuing disability. The WCJ, therefore, rejected Dr. Kaplan's testimony to the extent that it was contradicted by that of Dr. Sattel and Michael D. Wolk, M.D., the latter of whom reviewed Dr. Kaplan's treatment. *Id*., No. 21. In addition, the WCJ rejected the testimony of Claimant as to his injury, his disability and continued medical treatment. *Id*., No. 19.

The WCJ denied Claimant's penalty petition, determining that Employer proved that the treatment rendered by Dr. Kaplan from January 2012 and ongoing was neither reasonable nor necessary and that, therefore, Claimant failed to prove that Employer violated the Workers' Compensation Act (Act).[2] In support, the WCJ relied on Dr. Wolk's report rendered in the review of Dr. Kaplan's treatment. The Board affirmed and Claimant's petition for review followed. We turn first to the termination petition.

An employer seeking to terminate workers' compensation benefits bears the burden of proving either that the employee's disability has ceased or that

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1 - 1041.4, 2501 - 2708.

3

any current disability arises from a cause unrelated to his or her work injury. *Campbell v. Workers' Comp. Appeal Bd. (Antietam Valley Animal Hosp.)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). In this regard, an employer must prove by substantial medical evidence that all disability has ceased. *O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.)*, 29 A.3d 50, 53 (Pa. Cmwlth. 2011). An employer's burden is considerable in that disability is presumed to continue until demonstrated otherwise. *Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers)*, 635 A.2d 1123, 1127 (Pa. Cmwlth. 1993).

Claimant argues that the WCJ erred in granting Employer's termination petition, alleging that Dr. Sattel failed to testify that Claimant was fully recovered from all of the accepted work injuries detailed in WCJ Harlen's October 2011 decision. Mindful that those injuries include bilateral carpal-tunnel syndrome, status post carpel-tunnel surgeries, Claimant maintains that Dr. Sattel opined that they were limited to right carpal-tunnel syndrome. *See GA & FC Wagman, Inc. v. Workers' Comp. Appeal Bd. (Aucker)*, 785 A.2d 1087, 1092 (Pa. Cmwlth. 2001) (physician's testimony insufficient to support termination where he testified that employee was fully recovered from work injury but did not acknowledge the injury listed in the NCP as the injury from which employee recovered). In addition, Claimant contends that Dr. Sattel's opinion that Claimant could return to work, without more, is insufficient to support a termination of benefits. *Graham Architectural Prod. Corp. v. Workers' Comp. Appeal Bd. (Rothrock)*, 619 A.2d 404, 406 (Pa. Cmwlth. 1993). Claimant's position is without merit.

Dr. Sattel did not dispute the injury description of bilateral carpel-tunnel syndrome, status post carpel-tunnel surgery. In response to the question of

4

whether he formed a medical impression to a reasonable degree of medical certainty as to Claimant's status, Dr. Sattel responded:

> A. His clinical diagnosis was bilateral carpal tunnel. He had completed a right carpal tunnel release, which would be an appropriate course of treatment, on 8/24, and his evaluation in regards to median neuropathy for the right hand was unremarkable. I indicated that the left carpal tunnel evaluation was also really not significantly positive.

April 11, 2012 Deposition of Dr. Sattel, Notes of Testimony (N.T.) at 16-17. In addition, in response to the question of whether he disputed Claimant's diagnosis of bilateral carpal tunnel, Dr. Sattel responded as follows:

> A. Not whatsoever.
>
> Q. It's your understanding that his condition or symptoms were greater on the right, correct?
>
> A. Yes.

*Id*. at 28.

The point of confusion may arise from the fact that Claimant did not undergo carpal-tunnel release surgery on his left hand,[3] that the records that Dr. Sattel reviewed consistently indicated that any problem with the right hand was greater than with the left and that Dr. Sattel's independent clinical evaluation of both hands did not indicate significant problems with the left hand. Regarding the report of Dr. Shin, the surgeon who performed the right carpel-tunnel release, Dr. Sattel observed that Dr. Shin noted that the electromyography (EMG) for the right median nerve measured 4.9 and that the left measured 3.7, the latter of which some

---

[3] Although the WCJ did not accept Claimant's testimony as to his injury, disability and continued medical treatment, the fact-finding summarizing his testimony indicates that "[h]e has not had, and did not want to have surgery on his left hand." F.F. No. 12(b).

EMG studies would put within normal limits.[4]  *Id*. at 30.  In that regard, Dr. Sattel observed that Dr. Shin characterized the right measurement as moderate and the left as mild.  In addition, Dr. Sattel observed that Dr. Kaplan noted in his report that 1) Tinel's sign was barely positive on the right and negative on the left; and 2) Phalen's test was negative bilaterally.[5]  *Id*. at 32-33.

In addition, Dr. Sattel's independent clinical tests supported his conclusion that Claimant was fully recovered from any bilateral work injuries.  In that regard, Dr. Sattel testified as follows:

> Three different maneuvers for carpal tunnel – the Tinel's, carpal tunnel compression, and Phalen's maneuver were negative on the right.  On the left, with Tinel's testing he described some tingling.  When I asked him where he was getting the tingling, meaning what distribution, his response was, "Where you're hitting," but [the tingling] did not project into the fingers.  His carpal tunnel compression, where I applied sustained direct pressure over the media [sic] nerve, and the Phalen's test, where we had the wrist flex for a period of time, therefore loading or applying pressure to the carpal tunnel, did not reproduce symptoms of tingling.  The evaluation for the left hand and wrist otherwise was unremarkable.
>
> Sensory examination for the median and ulnar distribution bilaterally was intact.
>
> Finally, I performed a series of grip measurements with a device known as the Jamar dynamometer.  For the right hand, the first second and fourth settings measured 20, 30, and 30 pounds respectively.  On the left 40, 50, and 60 pounds respectively.

*Id*. at 15-16.

---

[4] An EMG is a diagnostic procedure to assess the health of muscles and nerve cells.

[5] Two diagnostic tests for physical signs of carpal tunnel include Tinel's sign and Phalen's maneuver.  The individual conducting these tests is ascertaining whether there is a sensation of tingling in the distribution of the median nerve over the hand.

6

Moreover, we reject Claimant's implication that Dr. Sattel opined that the accepted injury was limited to right carpal-tunnel syndrome, presumably based on Finding of Fact No. 15(d), which provides:

> d. Based on his review of all available medical records, Claimant's medical history, and his examination, Dr. Sattel agreed that Claimant suffered from right carpal tunnel syndrome. He further opined that as of his examination, Claimant had fully recovered and was able to return to work with no restrictions.

Notwithstanding the WCJ's juxtaposition of Dr. Sattel's opinion regarding the fact that Claimant suffered from right carpal-tunnel syndrome with his opinion regarding full recovery, what is clear from Dr. Sattel's deposition is that he acknowledged the accepted bilateral diagnosis multiple times. His independent evaluation of Claimant and review of the records, however, simply did not indicate any significant past or current issues with the left hand. Accordingly, Dr. Sattel's testimony supports the WCJ's ultimate conclusion that Employer proved "by unequivocal medical and fact evidence that as of November 30, 2011, Claimant was fully recovered from any work injury, and able to return to work with no restrictions." Conclusion of Law No. 2.

Moreover, we reject Claimant's allegation that Dr. Sattel merely opined that Claimant could return to work, without more. To the contrary, as the WCJ found, Dr. Sattel considered Claimant's description of his job duties and opined that there was no risk of reinjury if Claimant returned to his pre-injury work. F.F. No. 20(f). Indeed, Dr. Sattel testified that, in rendering his opinion, he considered an ergonomic assessment of the position at issue and Claimant's detailed description of his work responsibilities. April 11, 2012 Deposition of Dr. Sattel, N.T. at 38-39.

7

The WCJ is the ultimate finder of fact in compensation cases and has exclusive authority over questions of credibility and evidentiary weight. *Davis v. Workers' Comp. Appeal Bd. (City of Phila.)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). The WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Michel v. Workers' Comp. Appeal Bd. (U.S. Steel Corp.)*, 966 A.2d 643, 652-53 (Pa. Cmwlth. 2009). Where, as here, the WCJ's findings are supported by substantial evidence, we will not disturb those findings. *Nevin Trucking v. Workmen's Comp. Appeal Bd. (Murdock)*, 667 A.2d 262, 267 (Pa. Cmwlth. 1995). Accordingly, we conclude that Dr. Sattel's testimony was legally sufficient to support the termination petition. We turn now to Claimant's penalty petition.

Section 435 of the Act,[6] 77 P.S. § 991, provides for the imposition of penalties for violations of the Act. The decision to impose penalties is discretionary. *Muir v. Workers' Comp. Appeal Bd. (Visteon Sys. LLC)*, 5 A.3d 847, 853 (Pa. Cmwlth. 2010). Absent an abuse of discretion, a penalty determination will not be overturned on appeal. *Crucible, Inc. v. Workers' Comp. Appeal Bd. (Vinovich)*, 713 A.2d 749, 753 (Pa. Cmwlth. 1998). Further, it is the employee's burden to produce sufficient evidence of a violation. *Sanders v. Workers' Comp. Appeal Bd. (Marriott Corp.)*, 756 A.2d 129, 132-33 (Pa. Cmwlth. 2000).

In the present case, having determined that treatment by Dr. Kaplan from January 17, 2012 and into the future was neither reasonable nor necessary, the WCJ rejected Claimant's argument that Employer violated the Act by failing to pay for that treatment. In support, the WCJ referenced "the foregoing evidence of

---

[6] Added by Section 3 of the Act of February 8, 1972, P.L. 25.

8

record." F.F. No. 28. Although the WCJ neglected to include a detailed explanation in that fact-finding, the basis for her denial of Claimant's penalty petition is evident from the remainder of her decision, *i.e.* the fact-findings detailing Dr. Wolk's review of Dr. Kaplan's treatment. Dr. Wolk, whose testimony the WCJ accepted as credible and persuasive, based his conclusion that Dr. Kaplan's treatment from January 17, 2012 and ongoing was not reasonable or necessary on all of Claimant's available records and medical history and established treatment protocols. *Id.*, Nos. 16 and 23. Given the fact that the source of the "foregoing evidence of record" is evident from the WCJ's decision, we conclude that the WCJ did not abuse her discretion in denying Claimant's penalty petition.

Moreover, regarding Claimant's allegations that there are unpaid bills pre-dating the filing of the utilization review determinations and which are payable, we reiterate that it was his burden to produce sufficient evidence of a violation of the Act. *Sanders*. Here, that would include, at a minimum, citation to relevant evidence of record supporting those allegations.

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Marc Palmer,                                    :
                        Petitioner              :
                                                :
            v.                                  :    No. 79 C.D. 2015
                                                :
Workers' Compensation Appeal                    :
Board (Tasty Baking Company),                   :
                        Respondent              :

# **O R D E R**


        AND NOW, this 10th day of September, 2015, the order of the

Workers' Compensation Appeal Board is hereby AFFIRMED.



                                    _____
                                    **BONNIE BRIGANCE LEADBETTER,**
                                    Judge